## Ex parte EDGERTON.

(Circuit Court, D. South Carolina. December 11, 1893.)

CONSTITUTIONAL LAW—INTERSTATE COMMERCE—INTOXICATING LIQUORS.
There is no power in a state to forbid the importation of intoxicating liquors, either under the Wilson act of 1890, or independently thereof, and one who merely brings barrels of liquor into a port of South Carolina, and unloads them on the dock, cannot be punished under the state "dispensary" law. Leisy v. Hardin, 10 Sup. Ct. 681, 135 U. S. 100, and In re Rahrer, 11 Sup. Ct. 865, 140 U. S. 564, followed.

Habeas Corpus. Prisoner discharged.

Bryan & Bryan, for petitioner.
W. St. J. Jervey, for respondent.

SIMONTON, District Judge. This case comes up on a petition for habeas corpus, the rule thereon, and the return thereto. James E. Edgerton, the petitioner, is the general freight and passenger agent of the Clyde Line of steamships, and its general manager in the port of Charleston. These steamships ply between New York, Charleston, and Jacksonville over the high seas. Their business is that of common carriers engaged in foreign commerce and in commerce between the states.

On the 19th of September, 1893, there were brought to this port in the steamship Seminole, and unloaded at the dock of the line, along with other freight of a miscellaneous character, 12 barrels...

Each barrel had its mark,—nine of them were lettered; three had on them the name of the consignee in full. On each barrel was a statement of its supposed contents,—two were marked "Soda Water;" five, "Ginger Ale;" one, "Sarsaparilla;" one, "Mineral Water;" one, "B Cider." The manifest showed that all of the barrels were shipped in due course at New York, for delivery at the port of Charleston. On reaching the dock they were discharged with, and as a part of, the ship's cargo. On that day one R. H. Pepper obtained a warrant from a trial justice in Charleston, which, after reciting that complaint had been made before him by said Pepper that "James E. Edgerton, general freight agent of the Clyde Steamship Company, has brought into this state 12 barrels of intoxicating liquors, in violation of sections 2 and 25 of an act approved December 24, 1892," commands the arrest of Edgerton, to be brought before the justice, to be dealt with according to law. The affidavit with the warrant alleges that "Edgerton did unlawfully bring into this state the intoxicating liquors, contrary to the act of assembly in such case made and provided, and that Edgerton is not a licensed dispenser, and is without any permission or license to bring in the same." The petitioner was arrested, carried before the trial justice, released on bail, was afterwards surrendered by his sureties, and is now in custody of the sheriff of Charleston county under this warrant. He prays his discharge, for that his arrest, and the act of assembly upon which it is based, are in contravention of the interstate commerce law, of which he seeks the protection. The return of the sheriff gives as the cause of detention that Edgerton has been under recognizance to answer for a violation of the law of the state, and was surrendered by his sureties. The barrels in question were opened, and were found to contain beer,—an intoxicating liquor.

Looking to the warrant as stating the cause and ground of arrest, and assuming that the act of assembly which it quotes as its authority does in fact forbid the bringing of intoxicating liquors into this state, the question is, can any state forbid the importation of intoxicating liquors into its territory by a common carrier engaged in interstate and foreign commerce? The authority to regulate commerce with foreign countries and between the states is exclusively in the congress of the United States. When congress has not legislated on any part of this subject, such commerce is free. Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. 689, 1062. Mr. Justice Field, in County of Mobile v. Kimball, 102 U. S. 696, says:

"That power [to regulate commerce] is without limitation. It authorizes congress to prescribe the conditions upon which commerce in all its forms shall be conducted between our citizens and the citizens or subjects of other countries, and between citizens of the states, and to adopt measures to promote its growth and insure its safety. * * * Some of the subjects of commerce are national in their character, and admit and require uniformity of regulation, affecting alike all the states. * * * Of this class is that portion of commerce with foreign countries or between the states which consists in the transportation, purchase, sale, and exchange of commodities. Here, then, can be of necessity only one system or plan of regulations, and that congress alone can prescribe."

Mr. Justice Lamar, in Kidd v. Pearson, 128 U. S. 17, 9 Sup. Ct. 6, says:

"The power expressly conferred on congress to regulate commerce is absolute and complete in itself, with no limitations other than are prescribed in the constitution; is to a certain extent exclusively vested in congress, so far free from state action; is coextensive with the subject on which it acts, and cannot stop at the external boundary of a state, but must enter into the territory of every state whenever required by the interests of commerce with foreign nations or among the several states."

In Bowman v. Railway Co., 125 U. S. 465, 8 Sup. Ct. 689, 1062, a statute of Iowa forbidding common carriers to bring intoxicating liquors into the state from any state or territory without being first furnished with a certificate under the seal of the auditor of the county to which it is to be transported or consigned, certifying that the consignee, or the person to whom it is to be transported or delivered, is authorized to sell intoxicating liquors in the county, although adopted without a purpose of affecting interstate commerce, but as a part of a general system designed to protect the health and morals of the people against the evils resulting from the unrestricted manufacture and sale of intoxicating liquors within the state, is neither an inspection law nor a quarantine law, but is essentially a regulation of commerce among the states, affecting interstate commerce in an essential and vital part, and, not being sanctioned by the authority, express or implied, of congress, is repugnant to the constitution of the United States.

In Leisy v. Hardin, 135 U. S. 100, 10 Sup. Ct. 681, the supreme court of the United States, speaking through the chief justice, distinctly recognize intoxicating liquors as an article of commerce:

"They are subjects of exchange, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized by the usages of the commercial world, the laws of congress, and the decisions of the courts."

The precise question we are discussing was decided in that case. It was held that, in the absence of legislation on the part of congress, no state can prohibit the importation of intoxicating liquors from abroad or from a sister state; and, further, that the police power of the state over the imported article does not commence the instant when the article enters the country, but only when it has become incorporated in and mixed up with the mass of property in the country. The effect of this decision was to protect an imported article while in the original package, and, inasmuch as the right to sell followed the right to import, the original package could be sold if unbroken, notwithstanding that the law of the state into which it was imported absolutely forbade the manufacture or sale of intoxicating liquors. To meet this last conclusion, congress passed the act of 1890 commonly known as the "Wilson Act." Its title is "An act to limit the effect of the regulations of commerce between the several states and with foreign countries in certain cases." Its provisions are:

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale or storage therein, shall, upon arrival in such state or ter-

ritory be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers to the same extent and in the same manner as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise." 26 Stat. 313.

It will be noticed that this act does not in any way forbid the importation of intoxicating liquors; indeed, it deals with such liquors after having been transported into any state. In this connection it is well to compare the provisions of the act of congress extending the police power of the states over nitroglycerin:

"The two preceding sections shall not be so construed as to prevent any state, territory, district, city or town within the United States from regulating or prohibiting the traffic in or transportation of those substances between persons and places lying or being within their respective territorial limits or from prohibiting the introduction thereof into such limits for sale, use or consumption therein." Rev. St. § 4280.

It will also be noted that the act proceeds at once to remedy the mischief it was intended to meet. The regulations of commerce protected the original package. Under this protection, the laws of the state against the sale of intoxicating liquors were evaded, and the laws forbidding the manufacture made nugatory. Congress placed the original package under the state police power. It cautiously went no further. But we are not left to general reasoning. The construction of this act of congress came up in Re Rahrer, 140 U. S. 564, 11 Sup. Ct. 865. Of it, the chief justice, delivering the opinion of the court, says:

"Congress did not use terms of permission to the state to act, but simply removed an impediment to the enforcement of the state laws in respect to imported packages in their original condition, created by the absence of a specific utterance on its part. It imparted no power to the state not then possessed, but allowed imported property to fall at once on arrival within the local jurisdiction."

The decisions of the supreme court distinctly declare that before the passage of the Wilson act no state could forbid the importation of intoxicating liquors. This last case declares that the Wilson act gave no new power to the states. All that it did was to remove a protection from the imported package, and place it under state jurisdiction. . The liquors in this case without doubt come within the police powers of the state as soon as they become part of the property of the state. The commission of any act done in and about them, under such circumstances, can lawfully be punished. It is no offense on the part of this general agent of the Clyde Line that the liquors were imported as stated.

Let the prisoner be discharged.